UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER STRONG,

        Plaintiff,                            Hon. Jane M. Beckering

v.                                          Case No. 1:23-cv-521

AMAURY PEREZ, et al.,

        Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendants' Motion for Summary Judgment. (ECF No. 52). Plaintiff has not responded to the motion. Pursuant to 28 U.S.C. § 636(b)(1)(B), the undersigned recommends that Defendants' motion be granted and this action terminated.

## BACKGROUND

Plaintiff's claims arise from a series of events that occurred on August 22, 2020, and September 18, 2020, at the Michigan Reformatory (RMI). Plaintiff alleges that on August 22, he was speaking with Defendant Breedlove regarding a misconduct with which Plaintiff had been charged. During this conversation, Plaintiff was given a pen to sign the misconduct report. Rather than sign the misconduct report, Plaintiff "tried to explain" why the misconduct charge "should be abandoned." When instructed to sign the report and return the pen, Plaintiff refused. Defendant Breedlove allegedly got frustrated and stated, "Sign the fucking misconduct you dumbass and give me my pen back." Plaintiff again refused.

At this point, Defendant Perez approached Plaintiff and informed him that, if he did not return the pen immediately, he would "regret it." Plaintiff again refused to surrender the pen at which point Defendant Perez walked away. Plaintiff was charged with a misconduct violation and escorted to an observation cell. Before the group arrived at the observation cell, however, Defendant Perez instructed the officers escorting Plaintiff to place Plaintiff "in a nearby shower module to be strip searched." Plaintiff alleges that Defendant Breedlove then stated, "I'm bout get you maced (gased), you're about to burn. (Oh yeah) I'm throwing your property away (also)." Plaintiff further alleges that Defendant Perez ordered him to begin stripping for the search and Defendant Breedlove was "singing burn baby burn." A few moments later, a "squad of correctional officers" wearing gas masks arrived prepared to spray Plaintiff with chemical agent. Upon realizing that Plaintiff was, in fact, complying with Defendant Perez's instruction, the encounter ended without incident.

On September 18, Plaintiff alleges that Defendant Perez instructed Plaintiff that he was being moved to a different cell. Defendant Perez further informed Plaintiff that he would have to be searched before being placed in a different cell. Plaintiff was again escorted to a shower module and instructed to remove his clothing so that he could be strip searched. Plaintiff alleges that he immediately complied with this instruction. Defendant Perez nevertheless sprayed Plaintiff in the face with the chemical agent. Plaintiff alleges that he immediately fell to his knees and began choking.

-2-

Plaintiff was then placed in an observation cell. When Plaintiff later asked Defendant Perez why he sprayed him with the chemical agent, Defendant Perez responded, "I told you I was going to get my ounce of flesh." Later that day, Plaintiff was told that he needed to move cells again. Shortly thereafter, Plaintiff alleges that Defendant Perez sprayed Plaintiff again with the chemical agent. Plaintiff was subsequently taken to a shower module and ordered to strip down.

The Court previously dismissed Plaintiff's claims against Defendant Perez related to the August 22 incident for lack of exhaustion. (ECF No. 26). On September 9, 2024, Plaintiff was granted leave to file an amended complaint. (ECF No. 48). At this point in the proceeding, Plaintiff's remaining claims include: (1) excessive force claims against Defendant Perez based on the September 18 incident; (2) an excessive force claim against Defendant Breedlove based on the August 22 incident; and (3) a civil conspiracy claim against both Defendants. Plaintiff sues Defendants in both their individual and official capacities.

Defendants now move for summary judgment and argue that they are entitled to qualified immunity and sovereign immunity. (ECF No. 52). Plaintiff has failed to respond to the motion.[1]

---

[1] Defendants filed their Motion for Summary Judgment on October 18, 2024. (ECF No. 52). Plaintiff did not file anything until January 6, 2025. (*See* ECF No. 58). The Court subsequently extended Plaintiff's summary judgment response deadline to March 31, 2025. (ECF No. 65). Plaintiff has still not filed a response.

## **SUMMARY JUDGMENT STANDARD**

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Whether a fact is "material" depends on "whether its resolution might affect the outcome of the case." *Harden v. Hillman*, 993 F.3d 465, 474 (6th Cir. 2021).

A party moving for summary judgment can satisfy its burden by demonstrating that the non-moving party, "having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). Once the moving party makes this showing, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006). The existence of a mere "scintilla of evidence" in support of the non-moving party's position, however, is insufficient. *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005).

While the Court must view the evidence in the light most favorable to the non-moving party, that party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357. The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial." *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006). Likewise, the non-

moving party cannot merely "recite the incantation, 'credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof." *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353-54 (6th Cir. 2004).

Accordingly, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Daniels*, 396 F.3d at 735. Stated differently, the "ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Harden*, 993 F.3d 465 at 474.

Generally, where the non-moving party fails to respond to a motion for summary judgment, "the district court must, at a minimum, examine the moving party's motion for summary judgment to ensure that it has discharged its initial burden." *Miller v. Shore Fin. Servs., Inc.,* 141 F. App'x 417, 419 (6th Cir. 2005) (citing *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998)).

## ANALYSIS

### I.  Eleventh Amendment Immunity

A lawsuit against a state official for monetary damages is treated as a lawsuit against the State. *Brandon v. Holt,* 469 U.S. 464, 471 (1985). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts unless the state has waived immunity or Congress has expressly abrogated

Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh,* 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton,* 24 F.3d 823, 826 (6th Cir. 1993). Section 1983 did not expressly abrogate Eleventh Amendment immunity, *Quern v. Jordan,* 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court, *Abick v. Michigan,* 803 F.2d 874, 877 (6th Cir. 1986). As such, it is the undersigned's opinion that Plaintiff's claims against Defendants in their official capacities for monetary damages are properly dismissed in accordance with the Eleventh Amendment.

## II. Qualified Immunity

The doctrine of qualified immunity recognizes that government officials must be able to carry out their duties without fear of litigation. *See Davis v. Scherer*, 468 U.S. 183, 195 (1984). They can do so only if they reasonably can anticipate when their conduct may give rise to liability for damages and if unjustified lawsuits are quickly terminated. *Id.* The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights,* 712 F.3d 951, 957 (6th Cir. 2013). First, the Court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)). Second, the Court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing

*Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted,* 810 F.3d 437, 440 (6th Cir. 2016).

### A. Eighth Amendment

The Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia,* 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson,* 800 F.2d 600, 604 (6th Cir. 1986). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney,* 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson,* 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin,* 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers,* 43 F.3d 1034, 1037 (6th Cir. 1995)).

There is an objective component and a subjective component to an excessive force Eighth Amendment claim. *Santiago v. Ringle,* 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary,* 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams,*

631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Hudson,* 503 U.S. at 9-10 (quoting *Whitley v. Albers,* 475 U.S. 312, 327 (1986)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Id.* at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy,* 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

    1. <u>Defendant Perez</u>

Plaintiff asserts two excessive force claims against Defendant Perez based on Defendant Perez's use of the chemical agent on September 18, 2020. While chemical agents cannot be used by prison officials 'maliciously and sadistically . . .to cause harm,' chemical agents may be used against 'recalcitrant prisoners . . . in a good faith

-8-

effort to maintain or restore discipline.'" *See Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (collecting cases) (internal quotations omitted). Defendant Perez does not deny spraying Plaintiff with the chemical agent. Instead, he argues that he administered the chemical spray in a good-faith effort to maintain order and to force Plaintiff to comply with prison orders.

With regard to the first incident on September 18, Defendants have submitted a video showing what happened. (ECF No. 53-7). The video starts with Defendant Perez, along with several other correctional officers, standing outside Plaintiff's cell and ordering him to "strip." Plaintiff responded, "that's what I'm doing." Over the next several minutes, Defendant Perez repeatedly asks Plaintiff to take his clothes off and to give him his coat. At one point, Plaintiff states, "You'll get the coat, you stupid motherfucker." After at least five direct orders to give up the coat, Defendant Perez sprayed the chemical agent. Plaintiff blocked the first spray so Defendant Perez sprayed it again. Plaintiff then passed his coat through the slot on the shower module door. Plaintiff was provided with a six-minute decontamination shower and seen by a registered nurse. The nurse found no signs of distress. (ECF No. 53-9, 53-10). Although Plaintiff alleges in the amended complaint that he fully complied with Defendant Perez's orders, the video contradicts Plaintiff's version of events. "[W]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

With regard to the second incident on September 18, the Critical Incident Report states that Plaintiff had stuck his hand out of the food slot in his cell and refused to let staff close it. (ECF No. 53-6 at PageID.368). Defendant Perez ordered Plaintiff to remove his hand from the food slot, but Plaintiff refused. (*Id.*) After Plaintiff refused to comply, Defendant Perez sprayed the chemical agent. (*Id.*)

The record establishes that Defendant Perez's use of the chemical agent was done in a good-faith effort to force Plaintiff's compliance and maintain order. Plaintiff has presented no evidence to the contrary. And his version of events is contradicted by the video evidence. Accordingly, the undersigned recommends that Defendant Perez is entitled to summary judgment on Plaintiff's excessive force claims.

    2. <u>Defendant Breedlove</u>

Plaintiff's excessive force claim against Defendant Breedlove stems solely from the August 22 incident. As stated above, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter,* 501 U.S. 294, 298 (1991)). Here, Defendant Breedlove did not spray Plaintiff with the chemical agent on August 22. In fact, no one sprayed Plaintiff with the chemical agent on that date. In addition, Plaintiff conceded at his deposition that Defendant Breedlove "did not put his hands on me" during the incident. (ECF

No. 53-2 at PageID.349). Because Plaintiff was neither sprayed with chemical agent nor physically touched by Defendant Breedlove on August 22, the undersigned finds that Plaintiff has failed to show any pain inflicted was sufficiently serious. Accordingly, the undersigned recommends that Defendant Breedlove is entitled to summary judgment on the excessive force claim.

### B. Civil Conspiracy

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman,* 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). "Although circumstantial evidence may prove a conspiracy, it is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020) (quoting *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 563 (6th Cir. 2011)).

Plaintiff alleges that Defendants conspired together to use the chemical agent on him on August 22. Defendants argue that Plaintiff's conspiracy claim is based entirely on Plaintiff's unsupported allegation that Defendant Perez nodded and

winked at Defendant Breedlove on August 22.  Plaintiff has put forth no evidence to support his allegation of an agreement between the two Defendants.  In the opinion of the undersigned, there is no genuine issue of material fact as to the presence of a conspiracy between Defendants.  The undersigned recommends, therefore, that Defendants are entitled to summary judgment on Plaintiff's conspiracy claim.[2]

## CONCLUSION

For the reasons articulated herein, the undersigned recommends that Defendants' Motion for Summary Judgment (ECF No. 52) be granted and this action terminated.  For the same reasons the undersigned makes this recommendation, the undersigned finds that an appeal of such would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the undersigned further recommends that an appeal of this matter by Plaintiff would not be in good faith.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[2] Because the undersigned concludes that no constitutional violation occurred, the undersigned does not address whether the law was clearly established.

        Respectfully submitted,

Date: July 22, 2025        /s/ Phillip J. Green
        PHILLIP J. GREEN
        United States Magistrate Judge